IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 FEB 10 PM 1:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

LATONVIA SHELTON, )
 )
Plaintiff, )
 )
v. ) Case No. CV-01-TMP-699-S
 )
NTA GRAPHICS, INC., )
 )
Defendant. )

ENTERED
FEB 10 2003

**MEMORANDUM OPINION**

This action is before the court on the motion for summary judgment filed March 4, 2002, by the defendant, NTA Graphics, Inc., ("NTA"). Plaintiff Latonvia Shelton responded to the motion by filing a brief in opposition and supporting exhibits on April 19, 2002. The defendants submitted a reply brief on April 29, 2002. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons set forth herein, the defendant's motion for summary judgment is due to be granted.

**I. FACTS**

Viewing the evidence in the light most favorable to the plaintiff, the following undisputed facts are relevant to the instant motion.

35



Shelton was hired by NTA on August 28, 2000. NTA is a printing plant, and Shelton was hired to work in the press department as a "jogger," carrying and folding items after the printing process was finished and cleaning the area around the presses. Her first day of work at NTA was September 5, 2000. She received an NTA employee handbook, which contained rules regarding tardiness and absenteeism, and which also included the company's sexual harassment policy. That policy states:

> In accord with our equal employment policy, it is NTA Graphics' policy that all associates enjoy a workplace free of improper tensions created by sexual harassment. Sexual harassment includes sexual advances, requests for sexual favors, or other conduct of a sexual nature. None of these actions will be permitted in our workplace.
>
> If any inappropriate verbal or physical conduct takes place, the offended associate should immediately inform his or her supervisor, and/or Management. The problem will be investigated immediately.
>
> NTA Graphics will handle such investigation in a confidential manner. No associate who sincerely feels he or she has been discriminated against or harassed unlawfully will suffer any adverse consequences for reporting such conduct. NTA Graphics will thoroughly investigate the situation and, where warranted, take immediate and appropriate corrective action to adequately stop the harassment and prevent its recurrence. If sexual harassment is proven, disciplinary action will follow.

Shelton cannot read. Therefore, although she admits she received the handbook, she did not read the policy. She never told NTA she

2

could not read, and she never asked to have any NTA materials read to her.

She learned to use the time card system as part of her training, and she understood the attendance policies because she discussed them with co-employees. Her direct supervisor was John Desellem, who supervised all day-shift employees in the Press Department. The plant manager was Rodney Parker. The president of the company was Greg Klausing.

Shelton alleges that she was verbally and physically harassed by Ronald Palmer, a "lead material handler" in NTA's shipping and receiving department.[1] The harassment began her first week of work. Palmer would follow Shelton around the plant, and outside during her breaks. On her second day of work, Palmer threw his wallet onto the table in front of her and asked her how much it would cost to have her. He called her a "stupid worthless whore." He showed her a doughnut and told her he wanted to lick her like

---

[1] Shelton at times indicates that she believed Palmer was a supervisor. She based this belief on Palmer's statement to her that he had gotten other employees fired, and a statement in an NTA document that refers to Palmer's "supervisory position." NTA contends that the document was merely poorly worded, and attests that Palmer never had any supervisory authority over any other NTA employee, and that the only duties he undertook that could be construed as supervisory were when the supervisor in the shipping and receiving department was absent and Palmer would answer questions posed by department employees. Shelton seems to abandon her claim that Palmer was a supervisor in her brief, at pages 7 and 8, where she states that the employer is only liable if it had actual or constructive knowledge of the harassment.

3

the doughnut. His conduct escalated, and he began grabbing her breasts and buttocks and rubbing her legs. He would follow her to the women's bathroom and try to get inside the door. He exposed himself to her and asked her if she thought his penis was "the bomb."[2]

Some of the conduct was witnessed by at least one of her co-workers.[3] Eric Lewis, a housekeeper at NTA, tesfied that he observed Palmer making "sexual passes and comments to most of the African Americans working at the facility." Cynthia Jordan, who drove Shelton to work on several occasions, heard Palmer make crude and inappropriate comments to Shelton, saw him slap Shelton on the buttocks, and heard Palmer threaten Shelton.

As early as the first two weeks of her employment, her co-workers told her she should report Palmer's conduct to management. She did not report any of the harassing conduct to any supervisor.

---

[2] The court will not detail all of the incidents of alleged sexual harassment. Suffice it to note that the court finds, and the parties do not dispute, that if the alleged conduct took place, it was sufficiently severe and pervasive to constitute sexual harassment. See, e.g., Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000)(recognizing that an essential element of a hostile environment sexual harassment claim is that the conduct complained of be sufficiently "severe or pervasive" to alter the conditions of employment and to create an abusive work environment).

[3] Plaintiff also offers the affidavit of Terenia Hardy, but the affidavit is not notarized. Defendant has moved to strike the affidavit, and the motion is due to be and hereby is GRANTED, and the affidavit is STRICKEN.

Shelton claims she did not report the conduct because she believed Palmer was a supervisor who could get her fired. She believed this because he told her he had gotten other women fired in the past.[4]

On October 24, 2000, Parker and Desellem met with Shelton to discuss problems with her attendance. Shelton was given an Employee Warning Notice which stated that between October 1 and 14, 2000, she had been tardy three times, absent once, and late from lunch five times. During the meeting, Shelton also was counseled for her conduct in shouting a profanity at Palmer. At that time, she told Parker that she had been enduring ongoing sexual harassment from Palmer. Shelton asserts that NTA knew or should have known about Palmer's harassing conduct because Parker had made a comment at an office party in 1999 that Palmer "was approaching all the women in the plant and now he was working on the office personnel." Shelton also claims that NTA had notice of the offending conduct because Palmer "openly chased" women in the plant.

On October 24 and 25, 2000, the plant was shut down. On October 27, 2000, NTA began investigating Shelton's complaint of sexual harassment. Klausing, NTA's president, conducted the

---

[4] Defendant disputes that Palmer had any supervisory authority; however, for reasons explained in the Section III, *infra*, the court need not determine whether Palmer was a supervisor.

investigation. As part of the investigation, Klausing asked Shelton what she was doing to cause Palmer to "act that way." He also asked Shelton if she had brought x-rated pictures to work, and whether she was having an affair. Shelton denied any inappropriate conduct.

On October 30, 2000, as a result of the investigation, Palmer was found to have violated the company's sexual harassment policy and was immediately fired from NTA. In addition, Klausing rescinded the warning notice relating to Shelton's attendance and paid her wages in full for the days she had been docked for unexcused absences. The company also offered to reimburse her for any relevant medical expenses and otherwise offered to "make her whole."

On October 31, 2000, Shelton filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Shelton apparently continued to work at NTA until November 21, 2000, when she requested to leave early because she was sick. She left after working about two hours. She was next scheduled to work on November 25, 2000. She called in sick, and never returned to work at NTA. She presented a letter of resignation on December 5, 2000.

On March 21, 2001, she filed the complaint commencing this action, stating claims that: (1) NTA subjected her to a hostile

work environment caused by Palmer's sexually harassing conduct;[5] (2) NTA retaliated against her after she complained about Palmer's conduct; (3) NTA negligently trained and/or supervised Palmer; and (4) NTA discriminated against plaintiff by paying her less than similarly situated white employees.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of

---

[5] The Eleventh Circuit Court of Appeals has noted that courts should no longer analyze sexual harassment claims as "*quid pro quo*" or "hostile environment" claims, but rather should separate cases into those in which the harassment results in a tangible employment action such as termination, and those that do not result in an adverse employment action, but "alter an employee's working conditions." See, e.g., Frederick v. Sprint/United Mgt. Co., 246 F.3d 1305 (11th Cir. 2001).

a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court

must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion for summary judgment seeks dismissal of all of plaintiff's claims. Plaintiff has voluntarily dismissed her claims of retaliation and race discrimination (claims 3 and 4). Accordingly, claims 3 and 4 are due to be dismissed. The court will examine in turn plaintiff's remaining Title VII claim, and her state-law claim alleging negligent supervision.

**A. Title VII Sexual Harassment**

NTA asserts that the Title VII hostile environment claim (claim 1) is due to be dismissed. NTA asserts that Palmer was not a supervisor and that NTA did not have actual or constructive knowledge of the harassment.

Assuming, without deciding, that Palmer was a supervisor, the court finds that NTA's motion for summary judgment is due to be granted on the basis of the affirmative defense established in Burlington Industries v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). The Eleventh Circuit Court of Appeals has noted that the affirmative defense may be available to an employer even where the harassment was committed by a supervisor, if no adverse tangible employment action resulted from the harassment. See, e.g., Frederick v. Sprint/United Mgt. Co., 246 F.3d 1305 (11th Cir. 2001). For the affirmative defense to relieve the employer of liability for a supervisor's harassment, the employer must show (1) that it exercised reasonable care to prevent and promptly correct harassment, and (2) that the employee unreasonably failed to take advantage of the employer's opportunities to prevent or correct the harassment. Id. at 1313. The first element may be proven by a showing that the company had a sexual harassment policy that was effectively published to

11

employees, that it contained reasonable procedures for filing complaints, and that it contained no other fatal defect." Id. at 1314, citing Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1298-99 (11th Cir. 2000), cert. denied, 531 U.S. 926, 121 S. Ct. 303, 148 L. Ed. 2d 243 (2000). The second element may be proven by showing not only that the employee failed to follow the policy's complaint procedures, but also that her failure to do so was unreasonable. Frederick, 246 F.3d at 1314.

### 1. Employer's Reasonable Care

In the instant case, NTA argues that there is no genuine issue of material fact regarding NTA's exercise of reasonable care to prevent and correct sexual harassment in the workplace because it had policies and procedures in place to address the issue. Plaintiff does not allege any defect in the policy or the complaint procedure itself, and she does not complain that the policy was not provided to her. Shelton has testified, however, that she could not read and therefore did not understand the sexual harassment policy, even though she received a copy of it. Shelton admits that she never told NTA she could not read and never did anything to request that NTA or anyone else read the policy to her. There is no evidence that NTA had a significant number of employees who could not read or that NTA had any reason to believe that Shelton

could not read. Accordingly, the fact that Shelton could not read is not relevant to whether the employer exercised due care to prevent harassment, although it may be relevant to the issue of whether Shelton's noncompliance was reasonable. Because NTA promulgated a policy prohibiting sexual harassment in the workplace and provided avenues by which offended employees could report the conduct, the court finds that NTA took reasonable steps to *prevent* harassment. See, e.g., Madray, 208 F.3d at 1299, citing Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999)(recognizing that absent evidence of bad faith or that the policy was defective, a court generally may conclude that the employer who promulgated an anti-harassment policy exercised the requisite reasonable care).

The next issue, which is part of the first prong of the defense, is whether NTA took reasonable, prompt action to *correct* the harassment when it learned of Palmer's conduct. It is well settled that an employer may be liable for harassment of which it has notice unless it takes "prompt corrective action." Madray, 209 F.3d at 1299, citing Dees v. Johnson Controls World Services, 168 F.3d 417, 422 (11th Cir. 1999). The Eleventh Circuit Court of Appeals has noted that the requirement that the employer's actions be "prompt" does not call for "instantaneous" action, but simply requires the employer to respond in a "reasonably prompt manner." Frederick, 246 F.3d at 1314.

13

Shelton asserts, through vague assertions in co-worker Lewis's affidavit, that NTA knew of Palmer's conduct as early as 1999 and that Palmer "openly chased behind black females in the plant."[6] Shelton bolsters this vague testimony with her assertion that management employees were frequently in the plant.[7] In examining the specifics of the testimony, however, the court finds no support for Shelton's contention that NTA had actual or constructive knowledge of the harassment before Shelton reported it on October 24, 2000. Accordingly, NTA's care in *correcting* the conduct can only be judged by evaluating the steps taken after the conduct was reported in October of 2000.

---

[6] Plaintiff alleges that NTA knew of Palmer's conduct because Parker commented that Palmer had "approached" all of the women in the plant. Plaintiff further alleges that Palmer "openly" pursued females in the plant. However, in the absence of any evidence that the "approaching" or "pursuing" was objectively offensive as well as subjectively offensive to the women being pursued, these facts are not sufficient to show notice. The plaintiff has failed to produce any evidence that any woman ever complained about Palmer's conduct before Shelton complained on October 24, 2000. The employer cannot be expected to police every act of flirtation in the office when no employee voices any objection to the behavior.

[7] Lewis testifies that he witnessed several incidents in which Palmer harassed Shelton, but he does not provide any evidence that any member of management also witnessed the incidents or was present when the conduct occurred. Likewise, the affidavit of Jordan supports Shelton's assertions that the conduct occurred, but does not provide sufficient support for a finding that anyone in a management position at NTA witnessed any of the conduct or was aware of any of the conduct. Bare assertions that the conduct occurred "openly" is not sufficient to support a claim of constructive knowledge.

14

In this case, NTA learned of Palmer's conduct on October 24, 2000. An investigation into the allegations was launched three days later, on October 27, 2000, the next day the plant was in operation. On October 30, just three days after that, the company president terminated Palmer. There is no allegation that any sexual harassment continued at the plant after Palmer was fired. In addition, the company immediately took steps to "make Shelton whole" by paying her for hours she had taken off and withdrawing the disciplinary issued for her absenteeism. It is difficult to imagine a scenario in which an employer could have acted more promptly or more effectively. Accordingly, the court finds that the employer took reasonably prompt corrective action when it learned of Palmer's conduct.

### 2. Employee's Reasonable Use

The affirmative defense set forth in <u>Faragher</u> further requires the employer to demonstrate that the employee unreasonably failed to take advantage of the opportunities provided by the employer to correct sexual harassment. In examining a <u>Faragher</u> defense, the Eleventh Circuit Court of Appeals noted that "once an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then 'it is incumbent upon the employees to utilize the procedural mechanisms

established by the company specifically to address problems and grievances.'" Madray, 208 F.3d at 1300, citing Farley v. American Cast Iron Pipe, 115 F.3d 1548, 1554 (11th Cir. 1997). An employer must show that the victim of the harassment unreasonably failed to take advantage of the company's procedures or "otherwise avoid harm." Frederick, 246 F.3d at 1315, citing Faragher, 524 U.S. at 807.

NTA has demonstrated that it has a policy forbidding sexual harassment and that the policy was provided to Shelton. Shelton admits that several co-employees repeatedly told her that she should report her complaints regarding Palmer's conduct to management. Shelton testified that she relied on information from co-employees in order to understand the company's attendance policy. Shelton does not explain why she failed to similarly rely on co-workers' recommendations that she report Palmer's conduct, except to state that she was afraid Palmer would "get her fired." In essence, Shelton argues that her failure to comply with the complaint procedure was reasonable because she feared that she would lose her job.

The appellate court addressed a situation involving the employees' unreasonable failure to report offending conduct in Madray, where the plaintiffs failed to complain to the managers authorized by the policy to receive the complaints. In Madray,

plaintiffs did discuss the harassment with mid-level managers at the store where they worked. The court found that no reasonable factfinder "could conclude that the plaintiffs reasonably availed themselves of the preventive and corrective opportunities" provided by the employer. 208 F.3d at 1302. The appellate court again noted that "the problem of workplace discrimination ... cannot be [corrected] without the cooperation of the victims." Id., quoting Coates v. Sundor Brands, 164 F.3d 1361, 1366 (11th Cir. 1999).

In this case, it is undisputed that Shelton did not report the offending conduct to *any* manager at NTA until October 24, 2000, and that Shelton did not follow the company's policy, even though she had been advised to do so. Until October 24, 2000, Shelton unreasonably failed to avoid harm and to take action in accordance with NTA's policy. For this reason, NTA is not liable for Palmer's alleged harassment.

### B. Negligent Supervision

Plaintiff also sets forth in her complaint a claim of negligent retention or supervision. Under Alabama law, an employer may be held responsible for "his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." Armstrong Business Services, Inc., v. AmSouth Bank, 817 So. 2d 665, 682 (Ala. 2001). To prevail against a well

17

supported motion for summary judgment on a negligent supervision claim, the plaintiff must establish "by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned" of the employee's incompetence.  Id.  Such proof is accomplished by "showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice."  Id.

As discussed in Section III A *supra*, plaintiff has produced evidence that acts of alleged harassment occurred several times during the six or seven weeks Shelton worked at NTA and that they were witnessed in the parking lot by one non-employee who drove her to work and in the workplace by one co-worker.  The only evidence she has produced to demonstrate that any manager at NTA knew of Palmer's conduct was a statement that Parker knew Palmer had approached women in the plant and that Palmer "openly chased" women in the plant.  There is no evidence whatsoever that any woman, other than the plaintiff, ever complained that Palmer's flirtations were bothersome or unwelcome.  Absent sufficient proof that NTA knew or should have known of Palmer's incompetence, this claim also must fail.  Accordingly, the motion for summary judgment as to Shelton's negligent supervision claim is due to be granted.

18

### IV. CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that defendant's motion for summary judgment against plaintiff is due to be granted as to all of plaintiff's claims, and all of plaintiff's claims are due to be dismissed with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 10th day of February, 2003.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE